# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | | |
|---|---|---|
| QBE INSURANCE CORPORATION, | ) | C.A. NO. 4:17-CV-01611-RBH |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| OCEAN KEYES DEVELOPMENT, LLC; KEYE CONSTRUCTION COMPANY, INC.; KEYE COMMUNITIES, LLC; PINE BLUFF CONSTRUCTION CO.; KEYE REAL ESTATE, INC.; RUSSELL BALTZER; MARC HYMAN; BEACH VILLAS AT OCEAN KEYES PROPERTY OWNERS ASSOCIATION, INC.; SEASHORE VILLAS AT OCEAN KEYES PROPERTY OWNERS ASSOCIATION, INC.; LAKESIDE TOWNHOMES AT OCEAN KEYES HORIZONTAL PROPERTY REGIME, INC.; LAKESIDE TOWNHOMES AT OCEAN KEYES PROPERTY OWNERS ASSOCIATION, INC.; HARPER OCEAN KEYES, LLC; ROBERT F. MCKENNA; OLGA R. MCKENNA; ROBERT W. DISMORE; AND LUTHER A. BEAZLEY, III, TRUSTEE OF THE LUTHER A. BEAZLEY REVOCABLE TRUST, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **CONSENT ORDER** |
| DEFENDANTS. | ) ) | |

## I. BACKGROUND

1. QBE Insurance Corporation ("QBE") initiated this action on June 20, 2017 against the following Defendants: Ocean Keyes Development LLC ("Ocean Keyes"), Keye Real Estate, Inc. (collectively "Ocean Keyes Entities"); Keye Construction Co., Inc., Keye Communities, LLC, Pine Bluff Construction Co., Marc Hyman, Russell P. Baltzer ("Keye-

1

Related Entities"); Beach Villas at Ocean Keyes Property Owners Association, Inc., Seashore Villas at Ocean Keyes Property Owners Association, Inc., Lakeside Townhomes at Ocean Keyes Horizontal Property Regime, Inc., Lakeside Townhomes at Ocean Keyes Property Owners Association, Inc., Harper Ocean Keyes, LLC; Robert F. McKenna, Olga R. McKenna, Robert W. Dismore, and Luther A. Beazley, III, Trustee of the Luther A. Beazley Revocable Trust (collectively "Homeowner Parties").

2. QBE's Complaint alleged that the Defendant Homeowner Parties claimed construction defects at their respective condominium and townhouse projects, including to their individual units and the project common areas against some or all of the Ocean Keyes Entities and the Keye-Related Entities in the following underlying lawsuits:

    a. *Beach Villas at Ocean Keyes Property Owners Association, Inc. v. Ocean Keyes Development, LLC, et al*. in the Fifteenth Judicial Circuit in the Court of Common Pleas of Horry County, South Carolina, Case No. 2014-CP-26-6573 ("the *Beach Villas* action").

    b. *Seashore Villas at Ocean Keyes Property Owners Association, Inc. v. Ocean Keyes Development, LLC, et al*. in the Fifteenth Judicial Circuit in the Court of Common Pleas of Horry County, South Carolina, Case No. 2015-CP-26-8308 ("the *Seashore Villas* action").

    c. *Lakeside Townhomes at Ocean Keyes Horizontal Property Regime, Inc., et al. v. Ocean Keyes Development, LLC, et al*. in the Fifteenth Judicial Circuit in the Court of Common Pleas of Horry County, South Carolina, Case No. 2015-CP-26-5585 ("the *Lakeside Townhomes* action");

    d. *Harper Ocean Keyes, LLC, et al, v. Ocean Keyes Development, LLC, et al.*, in the Fifteenth Judicial Circuit in the Court of Common Pleas of Horry County, South

Carolina, Case No. 2015-CP-26-4599 ("the *Harper Ocean* action")

3. Collectively, the *Beach Villas* lawsuit, *Seashore Villas* lawsuit, *Lakeside Townhomes* lawsuit, and *Harper Ocean* lawsuit are collectively referred to as the "Underlying Actions".

4. The Defendant Homeowners alleged in the Underlying Actions that Ocean Keyes was the developer and/or general contractor of their homes.

5. QBE's Complaint alleged that QBE issued Policy Number JCG23468, which was effective from June 29, 2010 to June 29, 2011 ("2010-2011 policy") and Policy Number JCG23468-1, which was effective from June 29, 2011 to June 29, 2012 ("2011-2012 policy") (collectively, referred to as the "QBE policies").

6. QBE agreed to defend Ocean Keyes against the Underlying Actions under a "reservation of rights".

7. QBE's Complaint alleged the following regarding the QBE policies:

a. Both of the Declaration Pages in the QBE policies list "Keye Real Estate, Inc." and "Ocean Keyes Development, LLC" as Named Insureds, and identify them in the business description as: "real estate agent". The Declaration Pages state that the classification and annual premium calculation ($1,479) was based on the following: (1) real estate agents payroll, and (2) approximately 10,028 square feet of building or premises, classified as: "bank, office-merc, mfg (lessor's risk only)."

b. Each of the QBE policies contain a Commercial General Liability Coverage Part, which has a General Aggregate Limit of $2,000,000, a Products - Completed Operations Aggregate Limit of $2,000,000, and an "Each Occurrence" Limit of $1,000,000.

c. The Insuring Agreement in the QBE policies provide as follows:

a. We will pay those sums that the insured becomes

3

legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy

period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

d. Both of the QBE policies contain an Additional Insured – Managers or Lessors of Premises Endorsement, written on Form CG 2011 01 06, which states the following:

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY

ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

5

SCHEDULE

1. Designation of Premises (Part Leased to You):
   601 HILLSIDE DRIVE N 3000 NORTH MYRTLE BEACH SC 29582

2. Name of Person or Organization (Additional Insured):
   OCEAN KEYES DEVELOPMENT LLC

3. Additional Premium: $ INCLUDED

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Scheduled and subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.
2. Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

e. Section II - Who is An Insured in the QBE policies states the following:

1. If you are designated in the Declarations as:

    * * *

    c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as officers or directors. Your stockholders are also

insureds, but only with respect to their liability as stockholders.

\* \* \*

2. Each of the following is also an insured:

\* \* \*

    a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

\* \* \*

    (2) "Property damage" to property:

        (a) Owned, occupied or used by,

        (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company.

\* \* \*

    b. Any person (other than your "employee" or "volunteer worker", or any organization while acting as your real estate manager.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Inured if there is no other similar insurance available to that organization. However:

7

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or form the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

e. The QBE policies also contain a Limitation of Coverage to Designated Premises or Project Endorsement, written on Form CG 2144 07 98, which states the following:

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CARFULLY

LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

| Premises: |
| 601 HILLSIDE DRIVE N 3000 NORTH MYRTLE BEACH SC 29582 |

| Project: |
| |

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2. The project shown in the Schedule.

    f.    Section IV of the QBE policies contains a condition, titled "Representations", which states the following:

    6.    Representations

By accepting this policy, you agree:
a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

    8.    QBE's Complaint also alleged the following regarding the insurance application for the QBE policies.

    a.    On or about July 6, 2010, Marc Hyman signed an application for insurance, in which Keye Real Estate and Ocean Keyes were identified as "real estate agents".

    b.    The insurance application also indicated that "Ocean Keyes Development, LLC" requested to be added as an additional insured for one building: "Lessor's Risk Landlord".

    9.    QBE's Complaint contained nine counts, which sought the following:

a. A declaration that, under the terms and conditions of the QBE policies, there is no coverage for Ocean Keyes for the Underlying Actions, and QBE has no duty to defend or indemnify Ocean Keyes against the Underlying Actions.

b. A declaration that, under the terms and conditions of the QBE policies, there is no coverage for Keye Construction Company, Inc., Pine Bluff Construction Co., Inc., and Keye Communities, LLC, for the Underlying Actions, and QBE has no duty to defend or indemnify Keye Construction Company, Inc., Pine Bluff Construction Co., Inc., and Keye Communities, LLC against the Underlying Actions;

c. A declaration that, under the terms and conditions of the QBE policies, there is no coverage for Russell Baltzer and Marc Hyman for the Underlying Actions, and QBE has no duty to defend or indemnify Russell Baltzer or Marc Hyman against the Underlying Actions;

d. A declaration that, under the terms and conditions of the QBE policies, there is no coverage for the Underlying Actions pursuant to the Limitation of Coverage to Designated Premises or Project Endorsement in the QBE policies, and QBE has no duty to defend or indemnify any insured against the Underlying Actions;

e. A declaration that, under the terms and conditions of the QBE policies, there was no coverage for the Underlying Actions because some or all of the property damage was known to the insureds prior to the QBE policy's effective date of June 29, 2010, and therefore, QBE had no duty to defend or indemnify any insured against the Underlying Actions;

f. Rescission of the QBE policies based on alleged misrepresentations made in the application for insurance which identified Keye Real Estate, Inc., and Ocean Keyes as "real estate agents";

g. Reimbursement of attorneys' fees and other costs incurred in the Underlying Actions;

10. The Ocean Keyes Entities, Keye-Related Entities, and Homeowner Parties disputed QBE's contentions that were alleged in QBE's Complaint.

11. In an effort to avoid additional costly litigation, the parties voluntarily agreed to resolve Plaintiff's claims against the Defendants without further proceedings.

**Wherefore, it is ORDERED, ADJUDGED and DECREED:**

**II. SETTLEMENT, RELEASE AND POLICY BUY-BACK AGREEMENT**

12. The Settlement, Release and Policy Buy-Back Agreement ("Agreement"), attached to this Consent Order as <u>Exhibit A</u>, was agreed to in good faith by all parties to this action and made with the consent of all of the parties in this action.

13. The parties agree that the intent or objective of the Agreement is the following:

a. QBE's $750,000 payment towards the settlement or judgment satisfaction of the Underlying Actions, in return for a "policy buy-back", i.e., a complete rescission of the QBE policies, subject to the terms and conditions expressed in the Settlement Agreement. Therefore, QBE's $750,000 payment is consideration for buying back the QBE policies from the Ocean Keyes Entities.

b. QBE desires to effect a full and final settlement, compromise, mutual release, and resolution of all claims by the Homeowner Parties in the Underlying Actions; any unknown Plaintiffs, homeowners, or claimants in the Underlying Actions; and any and all disputes and disagreements related to the Underlying Actions, and to terminate and release any obligations QBE has or ever may have in the past, present, or future with respect to the Underlying Actions or the QBE policies, and to effect a policy buy-back of the QBE policies

from the Ocean Keyes Entities free and clear of all known liens, claims, encumbrances, and other interests, to the full extent permitted by law.

      c.      To ensure that the Homeowner Parties receive the exclusive benefit of QBE's $750,000 payment in order to satisfy the Homeowner Parties' claims in the Underlying Actions, either through settlements or judgments in the Underlying Actions, subject to certain conditions, as discussed in Section II of the Agreement.

      d.      To effectively rescind the QBE policies, ab initio, so that the Ocean Keyes Entities, Keye-Related Entities, and Homeowner Parties cannot assert or assign any rights or obligations in any way related to QBE or the QBE policies to any other party, including any insurer, subcontractor, plaintiffs, owners, principals, shareholders, general partners, limited partners, joint ventures, officers, directors, agents, attorneys, third-party administrators, employees, predecessors, members, and shareholders, or any other entity, whether known or unknown. including their insurers, or any other entity, under any circumstance, whether known or unknown, anticipated or unanticipated.

      e.      To agree that any purported assignment rights against QBE shall be null and void and will not bind any of the parties.

      f.      To effect a full and final settlement, compromise, mutual release, and resolution of all claims by each party against any other party relating to the instant action.

      g.      To provide each party the broadest possible release with respect to the QBE policies, the instant action, and any and all future claims that relate to the QBE policies, and to provide that, except as set forth in the Agreement, no party shall have any further obligations with respect to the QBE policies.

14. Pursuant to the Agreement and this Consent Order, the parties acknowledge and agree that:

    a.    QBE is a good faith purchaser of the QBE policies.

    b.    The $750,000 consideration provided by QBE to the Ocean Keyes Entities, pursuant to the Agreement, constitutes a fair and reasonable settlement of the instant action and of their respective rights and obligations relating to the QBE policies and constitute reasonably equivalent value.

    c.    The policy "buy-back" of the QBE policies constitutes a complete satisfaction of all QBE's past, present, and future obligations to the Ocean Keyes Entities, or any other insured or additional insured under the QBE policies or arising therefrom, as to any and all claims for insurance coverage or policy benefits of any nature whatsoever, whether legal or equitable, known or unknown, suspected or unsuspected, fixed or contingent, and regardless of whether or not such claims are in any way related to, connected with, based on, or arise out of the Underlying Actions, the instant action, or otherwise.

    d.    The Agreement is a full and final release of all claims between QBE and the Ocean Keyes Entities, QBE and the Keye-Related Entities, and QBE and the Homeowner Parties and shall apply to all known and unknown and anticipated and unanticipated damages that relate to the Underlying Actions, the instant action, and the QBE policies.

    e.    The Agreement is not a full and final release of any claims between the Homeowner Parties and the Ocean Keyes Entities, and the Homeowner Parties and the Keye-Related Entities that relate to the Underlying Actions.

    f.    In consideration for QBE's $750,000 payment, the Ocean Keyes Entities, Keye-Related Entities, and Homeowner Parties warrant that they have not, cannot, and shall not

assign any of their rights or obligations relating to this action, or the QBE policies to any entity, either known or unknown.

  g. The $750,000 payment by QBE to the Ocean Keyes Entities shall be used for the exclusive benefit of the Homeowner Parties' claims in the Underlying Actions, either through settlements or satisfaction of judgments in the Underlying Actions, subject to certain conditions, as discussed in Section II of the Agreement.

  h. QBE's $750,000 payment shall be made within thirty (30) calendar days after the Court grants this Consent Order.

  i. QBE's obligation to defend the Underlying Actions ends on the date the Court grants this Consent Order.

### III. SCOPE OF CONSENT ORDER

15. The provision of this Consent Order shall apply to each party, and each of their past, present, and future subsidiaries, affiliated companies, owners, principals, shareholders, general partners, limited partners, joint ventures, officers, directors, agents, attorneys, third-party administrators, servants, employees, predecessors, heirs, successors, assigns, members, and shareholders.

16. This Order is effective immediately upon its entry by the Court.

### IV. COSTS OF LITIGATION

17. All parties shall be responsible for their own attorney's fees and costs associated with this action.

### V. PLAINTIFF'S MOTION TO DISMISS

Plaintiff QBE concurrently filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 41(a)(2). Defendants acknowledge and consent to Plaintiff's dismissal without

prejudice.

Now, therefore, with the consent of the parties, Plaintiff's Motion to Dismiss is granted and all parties are dismissed from this action without prejudice.

AND IT IS SO ORDERED:

This 13th day of February, 2017.

s/ R. Bryan Harwell  
The Honorable R. Bryan Harwell  
United States District Judge

By their signatures below, the parties consent to the entry of this Consent Order.

WE SO MOVE:

By:  s/Stephen L. Brown
Stephen L. Brown     Federal I.D. #: 06428
    Email: sbrown@ycrlaw.com
Mary S. Willis       Federal I.D. #:12388
    Email: mwillis@ycrlaw.com
Young Clement Rivers, LLP
25 Calhoun Street, Suite 400
Charleston, SC  29401
Telephone:    (843) 720-5488

    and

YARON & ASSOCIATES

George D. Yaron      (*Admitted Pro Hac Vi*ce)
    Email: gyaron@yaronlaw.com
Jenna E. Settino     (*Admitted Pro Hac Vice*)
    Email: jsettino@yaronlaw.com
Telephone:    (415) 658-2929
Facsimile:    (415) 658-2930
1300 Clay Street, Suite 800
Oakland, California 94612
*Attorneys for QBE Insurance Company*

WE CONSENT:

By:  s/Andrew Preston Brittain
Andrew Preston Brittain
    Email: Preston@brittainlawfirm.com
The Brittain Law Firm PA
4614 Oleander Drive
Myrtle Beach, SC 29577
Telephone:    (843) 449-8562

*Attorney for Beach Villas at Ocean Keyes Property Owners Association Inc.*

WE CONSENT:

By: s/George Edward Mullen
George Edward Mullen
    Email: gmullen@mullenwylie.com
Mullen Wylie Law Firm
P.O. Box 5969
Hilton Head Island, SC 29938
The Brittain Law Firm PA
Telephone:    (843) 785-6969

By: s/Robert L. Wylie, IV
Robert L. Wylie, IV
    Email: rwylie@mullenwylie.com
Mullen & Wylie
Post Office Box 1980
Myrtle Beach, SC 29578
Telephone:    (843) 449-4800

By: s/Allison Burke Thompson
Allison Burke Thompson
    Email: aburkethompson@hotmail.com
Mullen & Wylie
171 Church Street, Suite 370
Charleston, SC 29401
Telephone:    (843) 853-5353

*Attorneys for Beach Villas at Ocean Keyes Property Owners Association Inc. and Seashore Villas at Ocean Keyes Property Owners Association Inc.*


WE CONSENT:

By: s/Luther O. McCutchen, III
Luther O. McCutchen, III
    Email:mac@lawyersatthebeach.com
McCutchen Mumford Vaught O'Dea and Geddie
4610 Oleander Drive, Suite 203
Myrtle Beach, SC 29577
Telephone:    (843) 449-3411

*Attorney for Lakeside Townhomes at Ocean Keyes Horizontal Property Regime Inc. and Lakeside Townhomes at Ocean Keyes Property Owners Association Inc.*

WE CONSENT:

By:  s/Phillip C. Thompson
Phillip C. Thompson
	Email: pthompson@thompsonlaw.com
Thompson and Henry
P.O. Box 1740
Conway, SC 29528
Telephone:	(843) 248-5741

*Attorney for Harper Ocean Keyes LLC, Luther A. Beazley, III, Olga R. McKenna, Robert W. Dismore and Robert F. McKenna*


WE CONSENT:

By:  s/David B. Miller
David B. Miller
	Email: dmiller@bellamylaw.com
Holly M. Lusk
	Email: hlusk@bellamylaw.com
Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, P.A.
P.O. Box 357
Myrtle Beach, SC 29578
Telephone:	(843) 448-2400

*Attorneys for Ocean Keyes Development, LLC, Keye Construction Company, Inc., Keye Communities, LLC, Pine Bluff Construction Co., Keye Real Estate, Inc., Marc Hyman and Russell Baltzer*